NATEIDA JARNIGAN,

    Plaintiff,

v.

Case No. 07-C-0109

METAVANTE CORPORATION,

    Defendant.

## COMPLAINT

### Nature of Claim

1. This is a proceeding for declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to the plaintiff by the Civil Rights Act of 1871, 42 U.S.C. §1981.

### Jurisdiction

2. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§1343(3) and 1343(4) conferring original jurisdiction upon this court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, under the Declaratory Judgment Statute, 22 U.S.C. §2201, and under 42 U.S.C. §1981.

### Parties

3. The plaintiff is an adult citizen of the state of Wisconsin who resides at 5325 North 44th Street in Milwaukee, Wisconsin. At all times material to this complaint, her name was Nateida West.

1

4. The defendant is a corporation organized under and existing by virtue of the laws of the state of Wisconsin. It has its offices and principal place of business at 4900 West Brown Deer Road in Milwaukee, Wisconsin.

5. The plaintiff, who is African-American, began work for the defendant in August, 2000, as a Staff Accountant and Financial Analyst. She worked in one of the defendant's sections, called Contract Administration, where she set up invoicing in accordance with contractual terms, set up new-customer invoicing conversion, and audits and review of customer credits.

6. In February, 2002, the plaintiff applied for the position of Audit Analyst I with the defendant. The position represented a promotion for the plaintiff because it carried with it more responsibility and greater remuneration. Notwithstanding that the plaintiff was better-qualified, the position was given by the defendant to a less-qualified, white, employee.

7. On December 19, 2002, John Warner, a white supervisor, gave the plaintiff a performance evaluation with an overall rating of "Accomplished." Meanwhile, the plaintiff was the victim of hostility because of her race, by John Warner and others; for example, she requested a personal day for January 20, 2003, so that she could be present at a court proceeding and Mr. Warner and Linda Swift required that she provide evidence that, in fact, she had to attend a proceeding in court whereas other, white, employees

requested personal days (as the court proceeding was) were not required to provide such evidence. In addition, another, white, employee was permitted to take a vacation day in January or February, 2003, at the very time for which the plaintiff had requested a vacation day and had been turned down.

8. The plaintiff brought her concerns about racial hostility to the attention of Rick Derksen on or about January 8, 2003, but nothing was done to alleviate the hostility or otherwise address the plaintiff's concerns. On January 7, 2003, the day before, she had filed a charge of discrimination on the basis of race with the U.S. Equal Employment Opportunity Commission.

9. The plaintiff was on vacation from December 23, 2002, until January 2, 2003, and, on January 8, 2003, she was summoned to a meeting with Linda Swift, her immediate supervisor, who is African-American, and Rick Derksen, who is white and who was a representative of the defendant's Department of Human Resources. At the meeting, Ms. Swift and Mr. Derksen told the plaintiff that, because of deficiencies in the plaintiff's "performance," she could resign, pursue transfer to another part of the defendant, or elect to be placed on a "Performance Improvement Plan" ("PIP") - this all notwithstanding that, only three weeks before, she had been described as an "accomplished" employee as a result of her work during 2002.

10. The plaintiff chose the option of pursuing transfer

3

within the defendant. She also advised the defendant that she had filed a charge of discrimination on the basis of race with the U.S. Equal Employment Opportunity Commission on January 7, 2003.

11. Thereafter, in spite of the plaintiff's opting to pursue transfer within the defendant, and her efforts to do so, she was placed on a PIP on February 18, 2003. Thereafter, she was was unable to pursue transfer within the defendant and, because she was on a PIP, she was unable - in spite of what she had been told by Mr. Derksen and notwithstanding Mr. Derksen's statement that he would do whatever he could to help her - to seek a position with M & I Marshall & Ilsely Bank, the defendant's parent.

12. The plaintiff's employment was terminated by the defendant on March 14, 2003.

## Relief Requested

WHEREFORE, the plaintiff respectfully requests that this court grant the following relief:

(a) enter a declaratory judgment that the acts and practices of the defendant complained of are in violation of the laws of the United States;

(b) award the plaintiff lost wages, including lost fringe benefits, which resulted from the illegal discrimination;

(c) award the plaintiff compensatory and punitive damages;

(d) award the plaintiff the costs of this action, together with reasonable attorneys' fees; and

4

(e) grant the plaintiff such other and further relief as, under the circumstances, the court deems appropriate.

### Jury Demand

The plaintiff requests trial by jury on all issues triable by right by a jury.

Dated at Milwaukee, Wisconsin, this _31_ day of January, 2007.

*/s/ F. Thomas Olson*
F. Thomas Olson
State Bar No. 01010170
Attorney for Plaintiff
Hall Legal, S.C.
Suite 410
759 North Milwaukee Street
Milwaukee, Wisconsin 53202
Telephone: 414-273-2001
Fax: 414-273-2015
E-mail: fto@hall-legal.com